**[J-112-2016] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 11 WAP 2016 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered December 21, 2015 at |
| | : | No. 1829 WDA 2014, affirming the |
| v. | : | Judgment of Sentence of the Court of |
| | : | Common Pleas of Erie County entered |
| | : | October 20, 2014 at No. CP-25-CR- |
| VICTORIA LIVINGSTONE, | : | 0002750-2013. |
| | : | |
| Appellant | : | ARGUED:  November 2, 2016 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE BAER**                    **DECIDED: NOVEMBER 27, 2017**

I agree with the majority's elimination of the legal fiction that a police officer engages in a mere encounter, which need not be supported by any level of suspicion under the Fourth Amendment of the U.S. Constitution, when the officer activates the vehicle's overhead emergency lights and approaches a stopped motorist parked on the side of an interstate highway.  As the majority ably articulates, because a reasonable person would not feel free to leave under these circumstances, they are subjected to an investigative detention, which, ordinarily, must be supported by reasonable suspicion.  I further agree with the majority's adoption of a discrete exception to the Fourth Amendment, which permits the seizure outlined above, notwithstanding the lack of reasonable suspicion of criminal activity, when an officer is acting pursuant to his community caretaking function.

I write separately, however, because I would hold that under the factual predicate before us, the seizure in the case *sub judice* was justified pursuant to the community

caretaker exception. Therefore, while I join Parts I, II-A, and II-B of the majority opinion, I respectfully dissent from the majority's ultimate determination in Parts II-C and III that the challenged evidence in this case should have been suppressed.

As the majority observes, the community caretaker doctrine generally encompasses three distinct exceptions to the Fourth Amendment: "the emergency aid exception; the automobile impoundment/inventory exception; and the public servant exception, also sometimes referred to as the public safety exception." Majority Opinion, *slip op.* at 24 (citations omitted). The instant matter implicates the public servant exception, which recognizes that police officers frequently perform functions beyond law enforcement in order to promote general safety and welfare in the communities in which they serve. Majority Opinion, *slip op.* at 28-29.

To determine whether an officer acted pursuant to his role as a public servant, the majority adopts a "reasonableness test," under which courts consider whether the officer has articulated specific facts reasonably suggesting that a citizen is in need of assistance. *See* Majority Opinion, *slip op.* at 29-37 (providing an overview of the disparate approaches to community caretaker seizures and adopting the "reasonableness test"). Specifically, the majority holds that in order for a seizure to be justified under the public servant exception: "[1] the officer must point to specific, objective, and articulable facts which would reasonably suggest to an experienced officer that assistance was needed; [2] the police action must be independent from the detection, investigation, and acquisition of criminal evidence; and, [3] based upon a consideration of the surrounding circumstances, the action taken by police must be tailored to rendering assistance or mitigating peril." Majority Opinion, *slip op.* at 43. The majority further holds that, once assistance has been provided or the peril has been mitigated, further police action will be evaluated under traditional Fourth Amendment

jurisprudence. *Id.*. While I agree with the majority's legal test defining the community caretaker doctrine generally, and the public service exception specifically, I disagree with its application of the exception to the facts raised herein.

During the suppression hearing in this case,[1] Trooper Jeremy Frantz initially testified regarding his general duties while on highway patrol. In addition to enforcing the law, Trooper Frantz stated that his duties frequently include assisting stopped or stranded motorists. N.T., 5/28/14, at 5. Trooper Frantz testified that when he comes across a stopped vehicle, he usually checks to see whether anyone in the vehicle is injured or in need of medical assistance. *Id.* He further testified that he occasionally assists stopped motorists with directions or with changing a tire if necessary. *Id.* at 5-7.

On the evening in question, Trooper Frantz was traveling on Interstate 79 when he observed a parked vehicle on the right hand berm of the highway. *Id.* at 7. In conjunction with his general responsibility to check on the safety of motorists, Trooper Frantz pulled alongside the vehicle in order to see whether assistance was needed. From this perspective, Trooper Frantz immediately observed signs of Appellant's intoxication, giving Trooper Franz reasonable suspicion to investigate further.

Applying the test for the public servant exception to the Fourth Amendment adopted by the majority, I would hold that the specific and articulable facts (that Appellant's car was stopped on the shoulder of a highway, rather than a rest stop, gas station, or the like) warranted the minimal intrusion of Trooper Frantz slowly approaching in his vehicle and peering at Appellant to ensure her well-being.

---

[1] As the majority observes, our well-settled standard of review regarding denial of a motion to suppress requires that we consider only the Commonwealth's evidence and so much of the evidence of the defense that remains uncontradicted. Majority Opinion, *slip op.* at 11 (citing *Commonwealth v. Gary*, 91 A.3d 102, 106 (Pa. 2014)).

Specifically, I would find that these facts presented an objective basis for concluding that Appellant may have been in peril. Therefore, I respectfully dissent from the majority's ultimate conclusion that the evidence obtained as a result of the seizure should have been suppressed.

The majority concludes that because Appellant's hazard lights were not activated and there was no inclement weather at the time of the seizure, there were no outward signs of distress sufficient to warrant rendering aid in this instance. Majority Opinion, *slip op.* at 43-44. Respectfully, I find this view myopic and, indeed, a disservice to the good citizens of Pennsylvania who may be in desperate need of available help, but will not receive it because of the majority's misguided attempt to protect their constitutional rights at the expense of their physical well-being.

Moreover, there is an additional peril at play here; the danger that another vehicle traveling at high speed will drift into the one parked on the shoulder of the highway, casing a catastrophic accident. Indeed, the Commonwealth took this position at the suppression hearing, contending that Trooper Frantz was performing his public safety duty in trying to minimize the safety risk posed by Appellant's vehicle being parked on the berm of an interstate highway. *See* N.T., 5/28/14, at 35 (stating that Trooper Franz was "basically trying to clear up the highway to get the motorist going -- to get going on their way and not potentially causing a hazard by being on the side of the road"); *see also* N.T., 5/28/14 at 5 (Trooper Frantz, while testifying as to his general duties while on highway patrol, stating that "[I] just assist them any way that they need to help them to get on the -- as fast as they can to get them out of that area"). Thus, in addition to having grounds for believing that Appellant may have needed assistance, Trooper Frantz had an objective basis to be concerned for the overall safety of the

highway because a parked vehicle located on the shoulder of an interstate highway without hazard lights obviously presents a potential safety risk to other motorists.

For the reasons set forth above, I conclude that the seizure in this case was reasonable for Fourth Amendment purposes under the community caretaker doctrine and that suppression was unwarranted. Therefore, I respectfully dissent from the majority's decision to reverse the lower courts and vacate Appellant's judgment of sentence.